UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRIAN W. EATON, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CASE NO.  2:19-cv-594 |
| | ) |
| PLYCEM USA LLC d/b/a ALLURA, | ) |
| | ) |
| Defendant | ) |

***PLAINTIFF'S COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND REQUEST FOR TRIAL BY JURY***

Plaintiff Brian W. Eaton (hereinafter "Eaton"), by his counsel, and for his cause of action against the Defendant Plycem USA LLC d/b/a Allura (hereinafter "Allura"), states as follows:

## I.  FACTUAL ALLEGATIONS

1. Eaton is a resident of Terre Haute, Vigo County, Indiana.

2. Eaton was hired by Allura in early April 2019 to work at its Terre Haute, Indiana manufacturing facility.  Allura manufactures fiber cement siding products.  Eaton was originally hired to work as an inspector for Allura, but was moved to a forklift operator position shortly after he began employment.

3. As explained below, Eaton learned that Allura terminated his employment in a letter he received on September 9, 2019.  The letter was back-dated to August 23, 2019, but the envelope shows the letter was mailed on September 7, 2019.  The letter actually claimed that Eaton was terminated effective August 3, 2019.  The August 3, 2019 date is significant because that is the day Eaton suffered a serious stroke.

4. On Saturday, August 3, 2019, Eaton had to leave work. He was having vision problems and balance problems that made walking difficult for him. Eaton reported that he was feeling this way to his foreman, Kalib Smith, and Eaton was allowed to leave work early and go home. Eaton went to bed and his condition worsened over the weekend. On Monday, August 5, 2019, Eaton went to the emergency room at Terre Haute Regional Hospital. Eaton was diagnosed as having suffered a stroke and Eaton was admitted as a patient at Terre Haute Regional Hospital.

5. Eaton was treated by a Hospitalist, Dr. Brucken, and a Cardiologist, Dr. Nasser, while admitted at Regional Hospital. Eaton remained at Terre Haute Regional Hospital until he was discharged on August 7, 2019.

6. Eaton was scheduled next to work on August 6, 2019. He texted his foreman, Kalib Smith, to let him know he was hospitalized and had suffered a stroke. Eaton also exchanged texts with his production supervisor, Jeff Wools, on August 7-8, 2019 to let him know of the stroke, as well. Both Mr. Smith and Mr. Wools told Eaton to provide Allura some type of doctor's note or documentation about his stroke. Finally, Eaton also communicated his stroke and hospital stay to Allura's human resources department, by leaving a telephone message for Taree Cavazos, Allura's Human Resources Manager.

7. Eaton had not suffered a stroke before August 3, 2019. He was diagnosed as having suffered an acute embolic stroke and diagnosed with high blood pressure (diastolic hypertension). Eaton's stroke caused him, at the time, to suffer substantial limitations in major life activities, including speaking, walking, thinking and concentrating. Eaton is being treated and is recovering well. However, most important to this claim, Eaton's Allura managers fired

him because he had the stroke and Allura plainly regarded Eaton as disabled and substantially limited in major life activities, including working.

8. Eaton attempted a return to work, but he returned too soon. Eaton worked on August 19, 2019 and a few hours of his shift on August 20, 2019, but Eaton was suffering debilitating headaches and he had to leave work. Eaton reported this to his foreman, Kalib Smith, who allowed Eaton to leave work. Eaton called the next day, August 21, 2019, to speak with Production Supervisor Jeff Wools about his medical condition. At this point, Mr. Wools told Eaton that he would have to obtain a Physician's Release that said that Eaton had "no restrictions" in order for Eaton to be permitted to return to work.

9. At this point, when it told Eaton he had to get medical records showing he had "no restrictions," Allura violated Eaton's rights. This demand for a "no restrictions" release was an overreaching and unlawful medical inquiry. The ADA provides that an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature and severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *See Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221, 1230-31 (10th Cir.1997). Here, Allura's demand for medical records stating Eaton had no medical restrictions whatsoever was far too broad to meet the exception at 42 U.S.C. § 12112(d)(4)(A). An employer-mandated examination can only be permissible *if narrowly tailored to address specific job-related concerns.* Eaton was a forklift operator. At most, Allura could ask for information to show whether Eaton could fulfill his forklift operator duties with or without a reasonable accommodation. There was no reason to demand that Mr.

Eaton be medical restriction free.

10. Importantly, Allura's demand that Mr. Eaton provide medical proof that he does not have any medical restrictions is a *per se* violation of the ADA. The ADA prohibits an employer from firing or refusing to consider an employee's work or return to work based upon permanent restrictions. Any policy that an employee return to work with "no permanent restrictions" or be "100% healed" constitutes a *per se* violation of the Americans with Disabilities Act (ADA) because it prevents individual assessment and necessarily operates to exclude disabled people that are qualified to work." *Steffen v. Donahoe*, 680 F.3d 738, 748 (7th Cir. 2012). Instead, if the employer genuinely had concern about Mr. Eaton's ability to perform a particular job based upon its concern about his stroke or any concern about potential medical restrictions, the ADA requires Allura to engage in the ADA's "flexible, interactive communication process" to determine if the employee (Eaton) can work with a reasonable accommodation. *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 963 (7th Cir. 2014); 42 USC § 12112(b)(5)(A). No reasonable accommodations were discussed or considered by Allura, which simply terminated Eaton's employment.

11. That said, regardless of his Eaton did get a release on September 3, 2019 from his treating physician, Dr. Brucken. The Release did state that Eaton could return to work with "no restrictions." Eaton brought a copy of that "no restrictions" release to the Allura Human Resources office that same day (September 3, 2019).

12. During this period of time Eaton was receiving medical treatment for his stroke and he was not allowed to work, Eaton did apply for short term disability benefits he had through his employment with Allura. One record from Cigna Insurance indicates Eaton did apply for

short term disability benefits on some date prior to August 30, 2019.

13. In terms of his actual disabilities stemming from his stroke and his diagnosis of high blood pressure, Eaton is taking medication and he is fully capable of performing all essential functions of his forklift operator job (or, if need be, the inspector job he was first hired to perform for Allura). Eaton simply needed a small amount of medical leave as a reasonable accommodation for his disability for hospitalization, medical treatment and to adjust to new medications (cholesterol medicine and a blood thinner).

14. Plainly, Allura fired Eaton because it regarded him as disabled and unable to do his job because he had suffered a stroke. This was a violation of the ADA. Moreover, providing Eaton a small amount of medical leave to address the stroke is a recognized reasonable accommodation under the Americans with Disabilities Act.

15. The Seventh Circuit has long interpreted the ADA's reasonable accommodation requirement as including paid or unpaid leave, subject to an employer's demonstration of undue hardship. *Golden v. Indianapolis Hous. Agency*, 698 F. App'x 835, 838 (7th Cir. 2017), citing *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 601 (7th Cir. 1998) (stating that there was sufficient evidence from which a reasonable juror could conclude that the second medical leave of 2-4 weeks, as requested—following an earlier leave of three weeks and a modified schedule for three weeks—would have been a reasonable accommodation and was a question of fact for the jury). See also *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 647-48 (1st Cir. 2000) (rejecting even a per se rule that extended leaves cannot be reasonable accommodations and citing other cases that have held that a medical leave of absence is a reasonable accommodation under the Act in some circumstances). Courts have pointed out that, under the

ADA, it may be appropriate to allow for intermittent short leaves of absence—a couple of days or even a couple of weeks—for someone with a condition that at various times renders him completely unable to work, such as Eaton's stroke and recovery period. *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 480-81 (7th Cir. 2017); *Byrne v. Avon Products, Inc.,* 328 F.3d 379, 381 (7th Cir. 2003).

16. Allura's decision to back date Eaton's termination to the August 3, 2019 date of his stroke is troubling on multiple levels. First, Eaton's job was in no jeopardy whatsoever on August 3, 2019. The only thing that happened was he had a stroke. Second, Eaton actually worked on August 19 and 20, 2019 and was certainly not told he was terminated. Third, by August 30, 2019, Eaton had been told by Allura that he could not work until his physician provided a release stating Eaton had "no restrictions." That was Allura's choice. Fourth, because he was not allowed to work, Eaton applied for short term disability benefits in later August 2019. Perhaps the back-dated August 3, 2019 termination date was Allura's attempt to avoid or prevent Eaton's success with his short term disability benefit application. There was no reason for Allura's decision to fire Eaton that was unrelated to Eaton's August 3, 2019 stroke.

17. Finally, other than the letter Eaton received on September 9, 2019, Allura has not communicated with Eaton about his termination from employment or provided him a reason (or an explanation) for his termination. Eaton has been significantly harmed by Allura's discriminatory termination of his employment. He is seeking all lost wages and benefits, reinstatement or front pay and benefits, and all compensatory and punitive damages, including compensatory damages for mental and emotional stress and anguish, humiliation, loss of enjoyment of life, career damage, and all pecuniary damages. Eaton is also seeking payment of

all of his reasonable attorney's fees, costs and expenses.

18. Eaton's claim arises under the Americans with Disabilities Act (ADA). His stroke itself and the underlying medical conditions that led to the stroke (e.g., high blood pressure, heart disease) are covered disabilities under the ADA and Eaton was fired because of his disability. Eaton was a qualified individual with a disability who was able to perform all essential functions of his job with Allura, with or without reasonable accommodation.

## II.  JURISDICTION AND VENUE

19. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 as Eaton's claims under the ADA raise federal questions of law.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the unlawful conduct alleged herein was committed in the Southern District of Indiana. More specifically, this case is properly assigned to the Terre Haute Division of the U.S. District Court for the Southern District of Indiana because Eaton worked for Allura in Terre Haute, Vigo County, Indiana.

## III.  ADMINISTRATIVE PROCEDURES

21. Eaton has complied with all of the administrative procedures that are conditions precedent to the filing of this lawsuit. With respect to his claim under the Americans with Disabilities Act, Eaton received his Notice of Right to Sue from the Equal Employment Opportunity Commission, which was dated November 21, 2019.

## IV.  AMERICANS WITH DISABILITIES ACT AMENDMENTS OF 2008 CLAIMS

22. Eaton incorporates herein by reference paragraphs 1 through 21 above.

23. Allura knowingly and intentionally discriminated against Eaton in violation of the Americans with Disabilities Act Amendments Act of 2008.

24. Allura's violations of Eaton's ADA rights include, but are not limited to, the following:

    a. Failing to reasonably accommodate Eaton's actual and perceived disabilities. This includes Allura's failure to engage with Eaton in the ADA-required interactive communication process;

    b. Discriminatory termination of Eaton from employment based upon Eaton's actual disabilities and based upon Allura's perception or treatment of Eaton as disabled in one or more major life activities, including circulatory function, vision, thinking, walking and working.

    c. Allura violated Eaton's ADA rights by making unwarranted medical inquiries about whether or not Eaton has a disability or medical restrictions and demanding from him medical records or information. The ADA provides that an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature and severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *See Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221, 1230-31 (10th Cir.1997). Moreover, Allura's demand for medical records stating Eaton had no medical restrictions whatsoever was far too broad to

        meet the exception at 42 U.S.C. § 12112(d)(4)(A).  An employer-mandated examination can only be permissible *if narrowly tailored to address specific job-related concerns.*  Eaton's forklift operator position did not require much strenuous physical exertion.  There was no reason to demand that Eaton be medical restriction free.

d.      Allura's demand that Eaton provide medical proof that he does not have any medical restrictions is a *per se* violation of the ADA.  The ADA prohibits an employer from firing or refusing to consider an employee's work or return to work based upon permanent restrictions.  Any policy that an employee return to work with "no permanent restrictions" or be "100% healed" constitutes a *per se* violation of the Americans with Disabilities Act (ADA) because it prevents individual assessment and necessarily operates to exclude disabled people that are qualified to work."  *Steffen v. Donahoe*, 680 F.3d 738, 748 (7th Cir. 2012).  Instead, if the employer genuinely had concern about Eaton's ability to perform a particular job based upon its concern about his stroke and high blood pressure diagnosis or any concern about potential medical restrictions, the ADA requires Allura to engage in the ADA's "flexible, interactive communication process" to determine if the employee (Eaton) can work with a reasonable accommodation.  *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 963 (7th Cir. 2014); 42 USC § 12112(b)(5)(A).  No reasonable accommodations were discussed or considered by Allura.

25. Allura is an employer as defined under the ADA, with fifteen or more employees working for it at all times relevant to this cause of action.

26. Allura's decisions to forbid Eaton from working and then the decision to terminate Eaton, along with its illegal medical inquiries and per se violations based upon insistence that Eaton prove he was "restriction free," violate the ADA's prohibition against disability discrimination in employment decisions.

27. Eaton is a qualified individual with a disability or perceived disability who is capable of performing all essential functions of his own job, forklift operator, with or without reasonable accommodation.

28. Allura terminated Eaton rather than engage with him in the interactive communication process required under the ADA.

29. Prior to his termination from employment and prior to his stroke, Eaton performed his job duties well and met Allura's reasonable expectations.

30. Eaton's disability and/or perceived disability improperly motivated Allura's decision to discharge him from employment. Such wrongful actions on the part of Allura violate Title I of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a and the Americans With Disabilities Amendments Act of 2008.

31. Allura failed and refused to make reasonable accommodations to Eaton's known and/or perceived physical limitations, in violation of Title I of the Americans With Disabilities Act, 42 U.S.C. § 12112(b)(5)(A). The effect of Allura's conduct has been to deprive Eaton of

equal employment opportunities and to deprive him of the same rights as are enjoyed by other citizens.

32. As a direct and proximate result of Allura's conduct, Eaton has sustained substantial economic losses, including past and future wage losses, and other economic benefits. Eaton has also sustained the loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, career damage, mental and emotional distress, discomfort, and loss of enjoyment of life, all to his detriment and damage in amounts not fully ascertained. Eaton is seeking all available compensatory damages against Allura for its violations of the ADA.  Further, as described herein above, Allura acted oppressively, maliciously, fraudulently and outrageously toward Eaton, with conscious disregard for Eaton's known rights and with the intention of causing unjust and cruel hardship to Eaton.  In acting in a deliberate and intentional manner, Allura intended to and did injure and annoy Eaton.  Eaton is seeking punitive damages against Allura for its violations of his rights and protections under the ADA.

33. As a result of Allura's discriminatory practices, Eaton has found it necessary to retain the services of an attorney and is therefore entitled to his reasonable attorney's fees, costs and expenses in this matter.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brian W. Eaton respectfully requests that the Court enter judgment in his favor against his former employer, Defendant Plycem USA LLC d/b/a Allura, and award to him all available damages, including, but not limited to, the following:

1. All damages available under the ADA, including all back pay and benefits, all available compensatory and punitive damages, front pay and benefits, and

       payment of all reasonable attorney's fees, costs and expenses;

2.     Costs;

3.     Pre-judgment interest, if available; and

4.     Any and all other relief just and proper in the premises.

                          Respectfully Submitted,

                          HASSLER KONDRAS MILLER LLP
                          100 Cherry St.
                          Terre Haute, Indiana 47807
                          (812) 232-9691

                          By/s/Robert P. Kondras, Jr.
                              Robert P. Kondras, Jr.
                              Attorney No. 18038-84
                              Attorney for Plaintiff
                              kondras@hkmlawfirm.com

### ***REQUEST FOR TRIAL BY JURY***

    Comes now the Plaintiff Brian W. Eaton, by counsel, and requests a trial by jury on all issues which may be tried to a jury.

                          Respectfully submitted,

                          HASSLER KONDRAS MILLER LLP

                          By   /s/Robert P. Kondras, Jr.
                              Robert P. Kondras, Jr.